Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY WOLKE & ROTTER LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Waseem Noor*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WASEEM NOOR, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIX, INC., MICHAEL WEENING, and CORY SINDELAR,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Waseem Noor ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Calix, Inc. ("Calix" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Calix; and (c) review of other publicly available information concerning Calix.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Calix securities between January 28, 2026 and April 21, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Calix engages in the provision of cloud and software platforms, and systems and services.

3. On April 21, 2026, after the market closed, Calix reported results for the first quarter of 2026 earnings, including that "[n]on-GAAP gross margin was 57.2%, *a decrease of 80 basis points sequentially.*" Further, the Company reported gross margin guidance for the second quarter of 2026 is "55.8% (at the midpoint) is down 140 basis points from the previous quarter. This decline is primarily due the *increase in memory component costs.*"

4. In the accompanying earnings call held on the same date, the Company's Chief Financial Officer, Cory Sindelar, stated "advanced purchasing had allowed us to avoid higher memory component costs during the first quarter. *However, that advanced supply has run its course, and we now face market prices.*" Sindelar further revealed "reflecting the effects of higher memory component costs," "[f]or the year, we *expect our non-GAAP gross margin to decline between 50 and 150 basis points*."

5. On this news, Calix's stock price fell $6.93, or 13.98% to close at $42.65 per share on April 22, 2026, on unusually heavy trading volume.

CLASS ACTION COMPLAINT

1

6.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company's first quarter margins had significantly benefited from advanced purchasing of memory components; (2) that the Company's advanced supply of memory components was dwindling; (3) that, as a result, the Company was experiencing negative margin pressure as it was forced to purchase memory components at rising market prices; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's margins, business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12. Plaintiff Waseem Noor, as set forth in the accompanying certification, incorporated by reference herein, purchased Calix securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13. Defendant Calix is incorporated under the laws of Delaware with its principal executive offices located in Hayward, California. Calix's common stock trades on the New York Stock Exchange ("NYSE") exchange under the symbol "CALX."

14. Defendant Michael Weening ("Weening") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15. Defendant Cory Sindelar ("Sindelar") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16. Defendants Weening and Sindelar (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

**SUBSTANTIVE ALLEGATIONS**

**Background**

17. Calix engages in the provision of cloud and software platforms, and systems and services.

**Materially False and Misleading**

**Statements Issued During the Class Period**

18.    The Class Period begins on January 28, 2026.[1] On that day, Calix issued a press release announcing its fourth quarter and full year 2026 financial results. The press release touted the Company's financial results, including its "margin record of 58%, marking the eighth consecutive quarter of margin improvement." Specifically, the press release stated as follows, in relevant part:

> During the fourth quarter of 2025, the Calix team delivered record revenue of $272 million, our sixth quarter of consecutive revenue growth, a sequential growth rate of 3%, year-over-year growth of 32% while guiding to continued sequential growth in first quarter of 2026, underscoring the robust demand for our unique platform model by our Broadband Experience Provider (BXP) customers. A fitting close to 2025 as our customers' success with our platform model drove annual revenue of $1 billion, representing 20% year-over-year growth. ***We also set another non-GAAP gross margin record of 58%, marking the eighth consecutive quarter of margin improvement.***

*            *            *

**Fourth Quarter 2025 Financial Results**

|  | GAAP | Non-GAAP | Guidance Non-GAAP[1] |
|---|---|---|---|
| Revenue | $272.4m | $272.4m | $267.0m – $273.0m |
| Gross margin | 57.7% | 58.0%[2] | 56.75% – 58.75% |
| Operating expenses | $148.0m | $126.8m[2] | $122.0m – $124.0m |
| Net income per diluted common share | $0.10 | $0.39[2] | $0.35 – $0.41 |

[1] Non-GAAP guidance provided on October 29, 2025.
[2] Non-GAAP excludes stock-based compensation, net of the effect for income taxes. See GAAP to non-GAAP reconciliations beginning on page 15.

*            *            *

> ***Gross margin may vary from quarter to quarter depending on customer and product mix as well as heightened memory costs due to AI demand.***

19.    On February 20, 2026, the Company submitted its quarterly report for the period ended December 31, 2025 on a Form 10-K filed with the SEC, affirming the previously reported financial results. The report purported to warn of risks which "could" or "may" negatively impact the Company, as follows in relevant part:

> ***We face risks associated with being materially dependent upon third-party vendors; certain factors such as component shortages that affect our business as***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

*a result of those dependencies have and could continue to disrupt our business and adversely impact our gross margin and results of operations.*

We materially depend upon third-party vendors for our complex global supply-chain operations, including for services to develop, design and source components and materials as well as manufacture, transport and deliver our products. If any of these vendors stop providing their services, for any reason, we would have to obtain similar services from other sources, which may not be available on commercially reasonable terms, if at all. We also have limited control over disruptions that may occur at the facilities of those providers, such as supply interruptions, labor shortages, strikes, shipping backlogs at ports and similar disruptions to transportation infrastructure, design and manufacturing failures, quality control issues, systems failures or facility closures arising from pandemics, natural disasters, terrorist attacks or acts of war. In addition, switching development firms or manufacturers could delay the manufacture and availability of products and/or require us to re-qualify our products with our customers, which would be costly and time-consuming. *Any interruption in the development, supply or distribution of our products would adversely affect our ability to meet scheduled product deliveries to our customers and could result in lost revenue or higher costs, which would negatively impact our gross margin and operating results and harm our business.*

*       *       *

*We have a history of fluctuations in our gross margin and operating results, which can make it difficult to predict our future performance and could cause the market price of our stock to decline.*

We have a history of fluctuations in our quarterly and annual gross margin and operating results, including fluctuations due to factors outside of our control. Factors that impact variability of our operating results include our ability to predict our revenue and reduce and control our costs, our ability to predict product functions and features desired by our customers, the impact of global economic and geopolitical events and conditions, including tariffs, trade controls, inflation, government shutdowns, market instability and economic downturns, our ability to effectively manage our global supply chain operations, our ability to effectively manage third parties upon whom we depend to conduct our business, our customers' spending patterns and purchasing decisions, the impact of competition, customer adoption of our products, our ability to manage our legal, contractual and regulatory obligations and liabilities and other risk factors identified in "Management's Discussion and Analysis of Financial Condition and Results of Operations" and in this "Risk Factors" section. *Our gross margin is further impacted by customer, geographic and product mix, the impact of competition on our prices, our ability to manage our costs associated with components and materials,* excess and obsolescence, expedite fees and logistics-related activities, contractual commitments and other product costs.

20.     The above statements identified in ¶¶18-19 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors:  (1) the Company's first quarter margins had significantly benefited from advanced purchasing of memory components; (2) that the Company's advanced supply of memory components was dwindling; (3) that, as a result, the

Company was experiencing negative margin pressure as it was forced to purchase memory components at rising market prices; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's margins, business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

21.　　On April 21, 2026, after the market closed, Calix reported results for the first quarter of 2026 earnings, including that "[n]on-GAAP gross margin was 57.2%, *a decrease of 80 basis points sequentially.*" Further, the Company reported gross margin guidance for the second quarter of 2026 is "55.8% (at the midpoint) is down 140 basis points from the previous quarter. This decline is primarily due the *increase in memory component costs.*" Specifically, the Company issued a stockholder letter which stated as follows, in relevant part:

> GAAP gross margin for the first quarter of 2026 was 56.9%, a decrease of 80 basis points sequentially and an increase of 120 basis points year-over-year. Excluding stock-based compensation, our non-GAAP gross margin for the first quarter of 2026 was 57.2%, a decrease of 80 basis points sequentially and an increase of 100 basis points from the year ago period.

> \*　　　　　　\*　　　　　　\*

> Our non-GAAP gross margin guidance for the second quarter of 2026 of 55.8% (at the midpoint) is down 140 basis points from the previous quarter. This decline is primarily due the increase in memory  component costs and to a lesser extent to customer and product mix partially offset by memory surcharges and the improvement in software and service gross margin after completing customer migrations to the third-generation cloud platform and winding down the second-generation cloud platform. We expect our non-GAAP gross margin to be down by 50 to 150 basis points in 2026, reflecting the impact from memory surcharges, memory component costs not absorbed by surcharges and incremental cloud costs associated with the migration of customers to our latest platform.

22.　　In the accompanying earnings call held on the same date, the Company's CFO, Defendant Sindelar, stated "advanced purchasing had allowed us to avoid higher memory component costs during the first quarter. *However, that advanced supply has run its course, and we now face market prices.*"  Sindelar further revealed "reflecting the effects of higher memory component costs,"  "[f]or the year, we *expect our non-GAAP gross margin to decline between 50 and 150 basis points*." Specifically, Sindelar stated as follows, in relevant part:

> Our first priority is to ensure that we have adequate supply such that our customers can continue to add subscribers and take market share. *Our advanced purchasing*

*had allowed us to avoid higher memory component costs during the first quarter. However, that advanced supply has run its course, and we now face market prices.* We are partnering with our customers to share in the higher memory costs, by initiating a surcharge, albeit it is a partial cost recovery and without adding gross profit is one way we can help our customers in this unfortunate memory supply environment.

*Our gross margin guidance for the second quarter of 2026 is between 24 -- sorry, 54.25% and 57.25%. Reflecting the effects of higher memory component costs,* the impact from surcharges and the customer and product mix. The decline in appliance gross margin is expected to be offset by improvement in software and service gross margin as the dual clog costs abate, and we optimize the current cloud environment. *For the year, we expect our non-GAAP gross margin to decline between 50 and 150 basis points.*

23.      On this news, Calix's stock price fell $6.93, or 13.98% to close at $42.65 per share on April 22, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Calix securities between January 28, 2026 and April 21, 2026, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.      The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Calix's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Calix shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Calix or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Calix; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30.     The market for Calix's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Calix's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Calix's securities relying upon the integrity of the market price of the Company's securities and market information relating to Calix, and have been damaged thereby.

CLASS ACTION COMPLAINT

8

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Calix's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Calix's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Calix's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased Calix's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Calix, their control over, and/or receipt and/or modification of Calix's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Calix, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

36.     The market for Calix's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Calix's securities traded at artificially inflated prices during the Class Period.  On February 20, 2026, the Company's share price closed at a Class Period high of $55.61 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Calix's securities and market information relating to Calix, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of Calix's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Calix's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Calix and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38. At all relevant times, the market for Calix's securities was an efficient market for the following reasons, among others:

(a) Calix shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Calix filed periodic public reports with the SEC and/or the NYSE;

(c) Calix regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Calix was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for Calix's securities promptly digested current information regarding Calix from all publicly available sources and reflected such information in Calix's share price. Under these circumstances, all purchasers of Calix's securities during the Class Period suffered similar injury through their purchase of Calix's securities at artificially inflated prices and a presumption of reliance applies.

40. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of

the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### NO SAFE HARBOR

41.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Calix who knew that the statement was false when made.

### FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

42.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Calix's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Calix's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Calix's financial well-being and prospects, as specified herein.

46. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Calix's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Calix and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management

team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Calix's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Calix's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Calix's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Calix was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class

would not have purchased or otherwise acquired their Calix securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     Individual Defendants acted as controlling persons of Calix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.   As set forth above, Calix and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: May 27, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: _/s/ Charles H. Linehan_
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  CLinehan@glancylaw.com
        PRajesh@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

_Attorneys for Plaintiff Waseem Noor_

# SWORN CERTIFICATION OF PLAINTIFF

## CALIX, INC. SECURITIES LITIGATION

I, Waseem Noor, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2. I did not purchase the Calix, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Calix, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

4/24/2026

_____
Date

*Waseem Noor*

_____
Waseem Noor

**Waseem Noor's Transactions in Calix, Inc. (CALX)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/1/2026 | Bought | 150 | $48.4450 |
| 4/13/2026 | Bought | 300 | $47.9800 |
| 4/20/2026 | Bought | 500 | $51.5039 |
| 4/20/2026 | Bought | 500 | $51.4250 |
| 4/20/2026 | Bought | 875 | $51.8416 |
| 4/21/2026 | Bought | 825 | $50.3200 |